



Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

FILED
CLERK, U S DISTRICT COURT

SEP 1 7 2003

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

SHAWNDELL DAVIS,

          Petitioner,

   v.

DON TAYLOR, WARDEN,

          Respondent(s).

CASE NUMBER <u>ED CV02-0074-HLH(JWJ)</u>

NOTICE OF FILING OF MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION

---

TO: ALL PARTIES OF RECORD

Elizabeth A. Missakian, Esq.
110 West C Street, Suite 2108
San Diego, CA 92101

Warren P. Robinson, Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA 92186

    You are hereby notified that pursuant to the Local Rules Governing Duties of Magistrate Judges, the Magistrate Judge's report and recommendation has been filed on <u>September 17, 2003</u>   a copy of which is attached.

    Any party having objections to the report and recommendation shall, not later than <u>October 1, 2003</u>, file and serve a written statement of objections with points and authorities in support thereof before the Honorable **JEFFREY W. JOHNSON**, U.S. Magistrate Judge.

    Failure to so object within the time limit specified shall be deemed a consent to any proposed findings of fact. Upon receipt of objections, or upon lapse of the time for filing objections, the case will be submitted to the District Judge for disposition. Following entry of judgment and/or order, all motions or other matters in the case will be considered and determined by the District Judge.

    The report and recommendation of Magistrate Judge is not a final appealable order. A notice of appeal pursuant to Federal Rules of Appellate Procedure 4(a)(1) should not be filed until entry of a judgment and/or order by the District Judge.

ENTERED ON ICMS

SEP 1 7 2003

CV

CLERK, UNITED STATES DISTRICT COURT

Dated: September 17, 2003
Attachment

By ___Amalia Carrillo___
     Deputy Clerk

---

M-51(6/98)   NOTICE OF FILING OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

1
2
3
4
5
6
7



FILED
CLERK, U.S. DISTRICT COURT

SEP 17 2003

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

8          UNITED STATES DISTRICT COURT

9     CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

10

11    SHAWNDELL DAVIS,                    )    Case No. EDCV 02-74-HLH (JWJ)
                                           )
12                    Petitioner,          )    REPORT AND
                                           )    RECOMMENDATION
13          vs.                            )    OF UNITED STATES
                                           )    MAGISTRATE JUDGE
14    DON TAYLOR, Warden,                  )
                                           )
15                    Respondent.          )
                                           )
16    _____)

17

18          This Report and Recommendation is submitted to the Honorable Harry

19    L. Hupp, United States District Judge, by United States Magistrate Judge

20    Jeffrey W. Johnson, pursuant to 28 U.S.C. § 636 and General Order 194 of the

21    United States District Court for the Central District of California.  For the

22    reasons discussed below, it is recommended that petitioner's petition for writ of

23    habeas corpus be **denied**.

24

25                    I.  PROCEDURAL BACKGROUND

26          On January 29, 2002, petitioner Shawndale Davis, a state prisoner

27    proceeding with counsel, filed a "Petition for Writ of Habeas Corpus by a

28    Person in State Custody (28 U.S.C. § 2254)."  On February 28, 2002, this

1 Court dismissed the petition as mixed.  (2/28/02 Order, p. 7.)  Petitioner was
2 given twenty-one days to file a First Amended Petition containing exhausted
3 claims only.  (Id. at 8.)
4      On March 19, 2002, petitioner filed a First Amended Petition containing
5 only exhausted claims, along with a motion to hold the First Amended Petition
6 in abeyance pending a decision by the California Supreme Court on habeas
7 review of his unexhausted claims.  On April 1, 2002, the Court granted
8 petitioner's motion to hold the First Amended Petition in abeyance.
9      On May 22, 2002, following a denial of petitioner's habeas petition by
10 the California Supreme Court, petitioner filed a Second Amended Petition
11 (hereinafter "Second Amended Petition" or "SAP") adding the newly exhausted
12 claims to those contained in the First Amended Petition.  The Second
13 Amended Petition challenges a 1998 conviction in the Riverside County
14 Superior Court.  (SAP, pp. 1-2.)
15      On July 8, 2002, respondent filed an "Answer to Second Amended
16 Petition for Writ of Habeas Corpus and Memorandum of Point [sic] and
17 Authorities in Support Thereof" (hereinafter "Answer").  On July 16, 2002,
18 petitioner filed "Petitioner's Traverse to Respondent's Answer [etc.]"
19 (hereinafter "Traverse").
20      This matter is now deemed under submission and ready for decision.
21
22 ## II.  FACTUAL BACKGROUND
23      The following summary of facts is excerpted from the Statement of Facts
24 in the California Court of Appeal's unpublished opinion in this case:
25      On June 27, 1997, Phillip LeBlanc (hereinafter "LeBlanc") and his
26 girlfriend were baby-sitting for the children of Mr. and Mrs. Coe.  Sometime
27 after 7:00 p.m., petitioner, a friend of LeBlanc's, arrived at the Coe residence
28 with another man.  The other man asked to use the bathroom and was in the

- 2 -

1   home for about 10 minutes.

2       Subsequently, it was discovered that two guns, an assault rifle and a
3   nine-millimeter handgun owned by Mr. Coe, were missing.

4       That same evening, Thomas Smith and his wife Ninfa were working at
5   the Tastee Freeze restaurant on East Florida Avenue in Hemet, which they
6   owned and operated.  The last customers left around 9:30 p.m., and Mr. Smith
7   went outside to take a break before preparing to close for the evening.  Two
8   men approached him, one holding a gun.  Later, Mr. Smith positively identified
9   petitioner and his co-defendant, Charles Gilbert (hereinafter "Gilbert"), as the
10  two men.

11      The men told Mr. Smith to enter the restaurant.  Upon entering the
12  business, the men ordered Mr. and Mrs. Smith to lay on the floor.  Gilbert
13  asked where the safe was, and Mr. Smith responded that there was no safe.
14  Gilbert then threatened to shoot Mrs. Smith if Mr. Smith did not tell Gilbert
15  where the safe was located.  Mr. Smith again told Gilbert that there was no
16  safe.  Gilbert then shot Mrs. Smith in the thigh.

17      Petitioner told Mr. Smith to stand up and open the cash register.  As Mr.
18  Smith did so, Gilbert told him to lie down again.  One of the two men then
19  took Mr. Smith's wallet and shot him.  The bullet rendered Mr. Smith a
20  paraplegic.

21      Mrs. Smith was also able to identify petitioner and Gilbert as the
22  robbers, and testified at trial that Gilbert was the shooter.  Mrs. Smith further
23  testified that petitioner had entered the restaurant earlier that evening and
24  asked what time the business closed.

25      Petitioner's former girlfriend testified at trial that petitioner called her
26  after the robbery and told her that petitioner was there when the robbery
27  occurred.  (5/15/02 Court of Appeal Opinion, pp. 3-5.)

28      Petitioner and codefendant Gilbert were tried jointly.  (SAP, p. 18.)

- 3 -

### III.  STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), habeas relief may not be granted unless the state court's adjudication of the merits of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Supreme Court has elucidated the requirements of § 2254(d) as follows:

> Under the "contrary to" clause, a federal habeas court may grant
> the writ if the state court arrives at a conclusion opposite to that
> reached by this Court on a question of law or if the state court
> decides a case differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable application"
> clause, a federal court may grant the writ if the state court
> identifies the correct governing legal principle from this Court's
> decisions but unreasonably applies that principle to the facts of the
> prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

In considering the second prong of § 2254(d)(1), "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409-10; see also Lockyer v. Andrade, 123 S. Ct. 1166, 1174-75 (2003) (for federal court to grant habeas relief, state court decision must be objectively unreasonable, not just incorrect or erroneous).

- 4 -

1   "[W]here there has been one reasoned state court judgment rejecting a

2   federal claim, later unexplained orders upholding that judgment or rejecting the

3   same claim [are presumed to] rest upon the same ground."  Ylst v.

4   Nunnemaker, 501 U.S. 797, 803-804, 111 S. Ct. 2590, 115 L. Ed. 2d 706

5   (1991).  This presumption is premised on the theory that a later unexplained

6   order does not purport to silently disregard the conclusions of the last reasoned

7   judgment, and thus a federal district court on habeas review may "look

8   through" the unexplained order to examine the last reasoned judgment.  Id.

9       The last reasoned judgment by a California state court on the issues

10   raised in this Petition is the California Court of Appeal's unpublished opinion

11   of May 15, 2000.  This Court thus looks to that opinion as the qualifying state

12   court decision for purposes of § 2254(d) review.

13

14   ## IV.  DISCUSSION

15   A.    Miranda Violation.

16       Petitioner argues that his entire post-arrest statement should have been

17   suppressed by the trial court as a violation of his Miranda rights.  (SAP, p. 9.)

18   For clarification, petitioner has divided his statement into three parts.

19   However, petitioner does not argue error as to part three which was held

20   admissible only for the purpose of impeaching the petitioner.  (See Id. at 12-

21   17.)

22       1.    Part One

23       In what has been referred to as part one of the police interview,

24   petitioner was asked 26 separate questions by officers before being advised of

25   his rights under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.

26   2d 694 (1966).  (SAP, p. 11.)  The trial court determined that this questioning

27   was noninterrogational, and therefore did not violate Miranda.  (SAP, Exh. A,

28   p. 39.)  Petitioner asserts that he was prejudiced by the admission of these

- 5 -

1   statements because he "admitted he was in Hemet on June 27 (CT p. 695),

2   admitted that he had previously served time in custody (CT p. 677), and

3   admitted that he was friends with 'T-Mac' who was one of the people officers

4   suspected of being involved in the Smith robbery. (CT p. 676.)" (Id. at 12.)

5       Upon review, the Court of Appeal determined that the trial court erred

6   in classifying this questioning as noninterrogational. (SAP, Exh. A, pp. 40-41.)

7   However, applying the harmless error analysis of Chapman v. California, 386

8   U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 328 (1967), the court concluded that the

9   error was harmless beyond a reasonable doubt because petitioner did not make

10  any admissions or incriminating statements. (Id.)

11      The Court of Appeal properly applied Chapman to the issue of prejudice.

12  See Ghent v. Woodford, 279 F.3d 1121, 1162 (9th Cir. 2002) (the erroneous

13  admission of statements taken in violation of a defendant's Fifth Amendment

14  rights is subject to harmless error analysis); see also Brecht v. Abrahamson, 507

15  U.S. 619, 620, 113 S. Ct. 1710, 123 L. Ed. 2d 3531 (1993) (Chapman

16  standard is properly applied in matters of direct review). Furthermore, the

17  court reasonably determined that under Chapman, the trial court's error was

18  harmless beyond a reasonable doubt. In fact, there is a complete lack of

19  prejudice in this instance because -- though the Court of Appeal overlooked

20  this fact -- the statements made in part one of the interview were not admitted

21  at trial. (SAP, p. 13.) Even if the statements had been admitted, no prejudice

22  was evident because the majority of petitioner's statements in part one of the

23  interview were not incriminatory. The only potentially incriminating

24  statement given by petitioner in part one was that he was in Hemet on June

25  27, 1997. However, other evidence admitted at trial established petitioner's

26  presence in Hemet on that date. For example, Phillip LeBlanc testified that

27  petitioner was present at the Coe residence on June 27, 1997; Ronald Gilbert,

28  the codefendant's cousin, testified that he saw petitioner at Weston Park in

1    Hemet on the day of the robbery; and Shawnette Price, Ronald Gilbert's

2    girlfriend, testified that petitioner had been at her home in Hemet on June 27th

3    and that she again saw petitioner in Hemet at approximately 6:00 p.m. the

4    same day.  (Answer, p. 19.)

5         Given these facts, the Court of Appeal's decision was not contrary to or

6    an objectively unreasonable application of federal law.  Accordingly, the

7    Petition should be denied as to this claim.

8         2.    Part Two

9         Following part one of the interview, petitioner was advised of his

10   Miranda rights.  (SAP, p. 11; Answer, p. 24.)  Subsequently, the following

11   dialogue transpired between petitioner and the two interviewing detectives:

12              [Petitioner:]  I mean right now I ain't gonna be much help

13        to you.  'Cause I really don't want to say nothing.  You know

14        what I'm saying, like 'cause I really want a lawyer, you know

15        what I'm saying really.  All I really even want to know now is

16        what I'm being charged with?

17              [Detective 1:]  Well you're being charged with robbery,

18        attempt[ed] murder, burglary which kind of goes hand in hand

19        with the robbery, sort of thing and . . .

20              [Detective 2:]  Burglary.

21              [Detective 1:]  Guess that's it.

22              [Detective 2:]  Down south.

23              [Detective 1:]  Oh, yeah.

24              [Petitioner:]  Down south?  What's that?

25              [Detective 1:]  On the South end of town.  It happened

26        earlier that same night.

27              [Petitioner:]  A burglary?  I was wondering what burglary

28        that happened on the uh south side of town.

                                    - 7 -

1        [Detective 1:]  Down on South State Street.

2        [Petitioner:]  Oh no, no burglary.  Oh see yeah.  See I

3    speak on that.  'Cause I speak on what I did do wrong.  I'm guilty

4    for that.  I bought some . . . we didn't burglarize nobody.  We

5    bought some guns from um . . . from what's his name.  Phillip.

6 (SAP, Exh. A, pp. 41-42 n.12.)  After a brief discussion regarding the purchase

7 of the guns, petitioner repeated his request for counsel.  (SAP, p. 11; Answer,

8 p. 25.)

9       The trial court ruled that petitioner had validly invoked his right to

10 counsel, but then waived this right with respect to the taking of the guns.

11 (SAP, p. 12; Answer, p. 26.)  The California Court of Appeal agreed with the

12 ruling of the trial court.  (SAP, Exh. A, p. 41.)  In coming to this conclusion,

13 the Court of Appeal stated that petitioner "freely initiated discussion about the

14 burglary."  (Id. at 43.)  In addition, the Court of Appeal held that because

15 petitioner's statements in part two were primarily exculpatory, any potential

16 Miranda error was harmless beyond a reasonable doubt.  (Id.)

17          a.   Invocation and Waiver

18       As noted by respondent, "to invoke the right to counsel, 'the suspect

19 must unambiguously request counsel.'"  Davis v. United States, 512 U.S. 452,

20 459, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994).  In this case, petitioner told

21 the detectives "I really want a lawyer, you know what I'm saying really."  (SAP,

22 Exh. A, p. 41-42.)  This statement was an unequivocal and unambiguous

23 request for counsel.  Therefore, the Court of Appeal was objectively reasonable

24 in determining that petitioner had validly invoked his right to counsel.

25       While petitioner maintained the rights expressed in Miranda, he also had

26 the prerogative to waive those rights.  See Miranda v. Arizona, 384 U.S. at

27 444.  However, such a waiver must have been "made voluntarily, knowingly

28 and intelligently."  (Id.)  The voluntariness inquiry raises two distinct issues.

1   Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410

2   (1986).  "First, the relinquishment of the right must have been voluntary in the

3   sense that it was the product of a free and deliberate choice rather than

4   intimidation, coercion, or deception.  Second, the waiver must have been made

5   with a full awareness of both the nature of the right being abandoned and the

6   consequences of the decision to abandon it."  Id.  In conducting such analysis,

7   the Court must look to the totality of the circumstances.  Id.; Fare v. Michael

8   C., 442 U.S. 707, 725, 99 S. Ct. 2560, 2572, 61 L. Ed. 2d 197 (1979).

9          As to the first issue, petitioner attempts to establish intimidation or

10  coercion by arguing that he was "worn down by lengthy questioning that was

11  not preceded by Miranda advisals."  (SAP, p. 13.)  However, given petitioner's

12  statement to the detectives that "when [he] was in the cell thinking like [he]

13  could probably get off 'cause they ain't read me my rights" (SAP, Exh. A, p. 38

14  n.10), and his later renewed invocation of his right to remain silent and to

15  counsel (Id. at 39), it does not appear that petitioner had been "worn down" by

16  the questioning.

17         Petitioner also argues that the detectives used deception in obtaining his

18  statements by speaking "with one another about the burglary they believed

19  petitioner had committed, in petitioner's presence, thus luring him into the

20  discussion."  (SAP, p. 16.)  This too is not the case.  The only "discussion"

21  between the two detectives was in response to petitioner's demand to know the

22  charges against him.  The first detective informed petitioner that he was being

23  charged with "robbery, attempt[ed] murder, [and] burglary which kind of goes

24  hand in hand with the robbery."  (SAP, Exh. A, p. 42.)  The second detective

25  then reminded the first that petitioner was also being charged with a second

26  burglary which happened "[d]own south," as opposed to the burglary of the

27  restaurant.  (Id.)  The detectives' statements came in direct response to

28  petitioner's question and cannot be characterized as a form of deception.

1   Considering the totality of the circumstances, this court finds that

2   petitioner's decision to talk about the taking of the guns was a deliberate

3   choice which was not elicited through intimidation, coercion, or deception.

4   Thus, the voluntariness element is satisfied.

5   As to the second element of the voluntariness inquiry, petitioner asserts

6   the statement that he "could probably get off 'cause they ain't read me my

7   rights" does not evidence an actual understanding of his rights.  (SAP, p. 15.)

8   This Court cannot agree; petitioner's statement evidences a level of knowledge

9   sufficiently sophisticated to understand the general nature of the exclusionary

10  rule.

11  Petitioner's comment that he "could probably get off" is not the only

12  indication that he was aware of his rights; his knowledge of his <u>Miranda</u> rights

13  is further evidenced by his two explicit invocations of his rights.  Undoubtedly,

14  Petitioner had knowledge of his rights and chose both to invoke and waive

15  those rights.  Accordingly, the second issue of the voluntariness analysis is

16  satisfied.

17  Citing <u>Desire v. Attorney General of California</u>, 969 F.2d 802, 805 (9th

18  Cir. 1992), petitioner further claims that his knowledge of his rights is not

19  relevant to determining whether he waived his rights following a valid

20  invocation.  (SAP, p. 15.)  Petitioner mischaracterizes the holding in <u>Desire</u>,

21  which states that voluntariness is irrelevant in the context of a statement

22  unconstitutionally elicited after the invocation of <u>Miranda</u> rights.  <u>Desire v.</u>

23  <u>Attorney General of California</u>, 969 F.2d at 805.  In fact, the Ninth Circuit

24  specifically states that "voluntariness would only be an issue after it was

25  established that the defendant asserted his rights and then initiated further

26  conversation with the police."  <u>Id.</u>  Such was the case with petitioner.

27  Petitioner cites several opinions from the United States Supreme Court

28  and the Ninth Circuit Court of Appeals in an attempt to establish

- 10 -

1   involuntariness of his waiver of rights.  However, the facts of each of these

2   cases differ dramatically from those of petitioner's case.  For instance, Smith v.

3   Illinois, 469 U.S. 91, 105 S. Ct. 490, 83 L. Ed. 2d 488 ( 1984), Edwards v.

4   Arizona, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), Alvarez v.

5   Gomez, 185 F.3d 995 (9th Cir. 1999), and Smith v. Endall, 860 F.2d 1528 (9th

6   Cir. 1988), all address issues of continued police interrogation rather than

7   statements initiated by the detainee after an invocation of rights.

8       In addition, petitioner misconstrues the facts of Westover v. United

9   States, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).  Petitioner

10   asserts that in Westover the Supreme Court held that "[w]here . . . a suspect is

11   subjected to the same officers in the same surroundings to a continuous

12   interview in the middle of which he, for the first time is read his rights, the

13   suspect is clearly more vulnerable."  (SAP, p. 14.)  However, the California

14   Court of Appeal was correct in distinguishing Westover as a case which "dealt

15   with separate interrogations, not statements made in a continuous interview by

16   the same officers."  (SAP, Exh. A, p. 42.)  In Westover, the suspect was

17   subjected to questioning by different officers from a different agency who

18   continued the suspect's interrogation in the same location where the prior

19   officers had questioned the suspect.  Westover v. United States, 384 U.S. at

20   495-96.  Furthermore, the pre-Miranda interrogation at issue in Westover

21   began on the night of the arrest and was continued the following morning until

22   noon.  Id. at 495.  The length of that interrogation necessarily created a more

23   coercive atmosphere than did the 26 pre-Miranda questions posed to

24   petitioner.

25       Finally, petitioner improperly relies on Oregon v. Bradshaw, 462 U.S.

26   1039, 103 S. Ct. 2830, 77 L. Ed. 2d 405(1983) and Smith v. Endall, 860 F.2d

27   1528 (9th Cir. 1988) for the claim that he did not "initiate" the conversation

28   with the detectives.  As discussed above, Smith dealt specifically with the

- 11 -

circumstance of continued police interrogation. In Bradshaw, while the Supreme Court did hold that not all statements rise to the level of "initiation," the court was specifically referring to a simple "request for a drink of water or a request to use a telephone." Moreover, the Supreme Court determined that the question "[w]ell, what is going to happen to me now," which is very similar to petitioner's request of "[a]ll I really want to know is what I'm being charged with," was an initiation of conversation with the police. Oregon v. Bradshaw, 462 U.S. at 1045-46.

Therefore, the decision by the Court of Appeal that petitioner validly invoked his right to counsel and subsequently waived that right, was not contrary to, or an objectively unreasonable application of, federal law.

b. Harmless Error

Even if the trial court erred in admitting petitioner's statements from part two of the interview, petitioner suffered no prejudice from that admission.

Petitioner claims the alleged error prejudiced him with regard to the charge of grand theft because the statements included his admission that he went to the Coe residence and took guns from LeBlanc. (SAP, p. 17.) However, these statements were exculpatory in that petitioner insisted he had purchased the guns from LeBlanc. (SAP, Exh. A, p. 42.) While petitioner admitted that he knew the guns did not belong to LeBlanc, and that petitioner was therefore guilty of receiving stolen property (SAP, p. 17), this conduct was not the crime with which petitioner was charged (see SAP, Exh. A, 2).

Furthermore, other independent evidence established petitioner's involvement in the theft of the guns. LeBlanc testified that he was at the Coe residence when petitioner and another man arrived at the home. (SAP, Exh. A, p. 4.) LeBlanc stated that the other man asked to use the restroom and was inside the house for approximately ten minutes. (Id.) It was subsequently discovered that two guns were missing from the residence. (Id.) In addition,

1   police found three unspent bullets in the truck petitioner had been driving; the

2   bullets matched one of the stolen weapons.  (Answer, p. 16.)

3       Under the Chapman standard, a federal constitutional error can only be

4   held harmless if the reviewing court is able to declare a belief that the error was

5   harmless beyond a reasonable doubt.  Chapman v. California, 386 U.S. 18, 23,

6   87 S. Ct. 824, 17 L. Ed. 2d 328 (1967); see Brecht v. Abrahamson, 507 U.S.

7   619, 620, 113 S. Ct. 1710, 123 L. Ed. 2d 3531 (1993) (Chapman standard is

8   properly applied in matters of direct review).  Under the circumstances of

9   petitioner's case, the Court of Appeal's decision that the admission of these

10  statements was harmless beyond a reasonable doubt was not contrary to, or an

11  objectively unreasonable application of, federal law.

12  **B.    Admission of Codefendant Statements.**

13      In ground two of the Petition, petitioner cites Richardson v. Marsh, 481

14  U.S. 200, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987) for the assertion that the

15  trial court improperly admitted statements from codefendant Gilbert without

16  giving a limiting instruction.  (SAP, p. 18.)  In Richardson, the United States

17  Supreme Court concluded that the Confrontation Clause is not violated by the

18  admission of a nontestifying codefendant's statement as long as the statement

19  is properly redacted and the court gives an instruction limiting the jury's

20  consideration of the statements to the declarant only.  Richardson v. Marsh,

21  481 U.S. at 211.

22      Petitioner specifically refers to a rap song written by codefendant Gilbert

23  in which he detailed the crime and indirectly implicated petitioner.  (Id.)

24  Petitioner claims that this rap song identified him as Gilbert's accomplice and

25  implied that petitioner shared Gilbert's intent in committing the crimes.  (Id.

26  at 18-19.)  Petitioner notes that in closing arguments, the prosecutor stated the

27  song was evidence that "these are the defendants who committed this crime."

28  (Id. at 18.)  Petitioner contends that this error was not harmless because "the

1    evidence admitted against petitioner, particularly as to issues relating to his

2    lack of vicarious liability for Gilbert's conduct in shooting the victims, was not

3    overwhelming." (Id. at 19.)

4         Respondent argues that the California Court of Appeal reasonably denied

5    relief on this claim. (Answer, p. 34.)  Respondent further argues that "the most

6    important part of the song . . . was properly admitted against petitioner as a

7    statement against Gilbert's penal interest." (Id. at 37.)  Although respondent

8    admits that the admission of the remaining portions of the rap song was error,

9    he asserts that petitioner was not prejudiced. (Id.)

10        The California Court of Appeal determined that the admission of

11   portions of Gilbert's song "could be considered a violation of Richardson

12   because the existence of a second robber was confirmed, and no limiting

13   instruction was given." (SAP, Exh. A, p. 45.)  Nonetheless, the court went on

14   to hold that any Richardson error "was harmless beyond a reasonable doubt."

15   (Id. at 46.)

16        Since the trial court in petitioner's case failed to give a limiting

17   instruction with regard to Gilbert's rap song, the Court of Appeal was

18   objectively reasonable in finding error under Richardson.

19        The Court of Appeal also made an objectively reasonable prejudice

20   determination.  The Court of Appeal determined that "[t]here were

21   indisputably two robbers, and [petitioner] even admitted to a witness that he

22   was in the Tastee Freeze at the time of the robbery." (SAP, Exh. A, p. 46.)  In

23   addition, both victims identified petitioner as being one of the robbers.

24   (Answer, p. 7.)  Given the weight of the evidence against petitioner, the Court

25   of Appeal was objectively reasonable in its determination, under the standard

26   of Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 328

27   (1967), that the Richardson error did not prejudice petitioner.

28   ///

- 14 -

C.    **Instructional Error.**

Petitioner claims that the trial court erred when it instructed the jury to determine whether "the crimes of attempted murder were a natural and probable consequence of the commission of the crimes of robbery." (SAP, pp. 19-20.)  Petitioner contends that this instruction encouraged the jury to consider whether attempted murder was a natural and probable consequence of the crime of robbery generally, rather than of the particular robbery that took place in this case.  (<u>Id.</u> at 20.)

Petitioner further asserts that this claim must be reviewed for constitutional error under <u>Chapman v. California</u>, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).  (<u>Id.</u>)

Respondent argues that the Court of Appeal reasonably rejected petitioner's claim and that any potential error should be reviewed under <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 3531 (1993) instead of <u>Chapman</u>.  (Answer, p. 43.)

The California Court of Appeal determined that the instruction at issue did not violate state law as expressed in <u>People v. Hammond</u>, 226 Cal.Rptr. 475 (1986).  (SAP, Exh. A., p. 51.)  The court went on to conclude that even if the trial court had committed error, it was harmless.  (<u>Id.</u> at 52.)  In so holding, the court noted Justice Mosk's dissent in <u>People v. Prettyman</u>, 14 Cal.4th 248, 280 (1996), in which he stated "[t]he superior court's error in giving an 'abstract' instruction on the natural-and-probable-consequence rule violated California law, but did not implicate the United States Constitution. [Citation.]  In most cases an error of this sort is harmless. [Citation.]  So was it here."  (<u>Id.</u>)  This quote from Justice Mosk was the only consideration of federal constitutional issues by the Court of Appeal.  In addition, the Court of Appeal held that petitioner's argument fails because he had a duty to request a clarifying instruction if he deemed it necessary, but he failed to do so.  (<u>Id.</u> at

- 15 -

1   53.)

2        Notwithstanding the alleged constitutional error, the California Court of

3   Appeal was not objectively unreasonable in finding that any potential error was

4   harmless.  Under Chapman v. California, 386 U.S. at 24, the standard

5   appropriately applied upon direct review, the Court of Appeal could have

6   reasonably decided that under these circumstances the alleged instructional

7   error was so insignificant that it was harmless beyond a reasonable doubt.

8        Importantly, the result is the same under the Brecht standard.  See Bains

9   v. Cambra, 204 F.3d 964, 976-77 (9th Cir. 2000) ("district courts always

10  should apply the Brecht standard when conducting their own independent

11  harmless error review").  Under Brecht v. Abrahamson, 507 U.S. at 623, 631,

12  reversal is only required if the alleged error "'had a substantial and injurious

13  effect or influence in determining the jury's verdict.'"  Given the nature of the

14  crime involved in this case, it cannot be said that the instruction in question

15  had such an effect on the jury.  The mere fact that Gilbert was armed when he

16  and petitioner entered the restaurant could lead a reasonable jury to conclude

17  that attempted murder was a natural and probable consequence of the instant

18  robbery.  Therefore, the alleged instructional error could not have had a

19  substantial or injurious effect on the jury's verdict.

20       Accordingly, the decision by the California Court of Appeal was neither

21  contrary to, nor an unreasonable application of, federal law.

22  **D.    Vicarious Liability.**

23       Petitioner's final contention is that he was erroneously sentenced to an

24  indeterminate life sentence on a theory of vicarious liability because the jury

25  was not required to find that petitioner himself premeditated and deliberated

26  the attempted murder.  (SAP, pp. 21-22.)  Petitioner's primary argument is

27  that the California Court of Appeal, in People v. Lasater, 61 Cal. Rptr. 2d 680,

28  694 (1997), erred in holding that an aider and abettor can be held vicariously

- 16 -

1   liable for deliberate and premeditated murder even if he did not personally

2   deliberate or premeditate. (<u>Id.</u> at 21.)  However, petitioner also asserts that

3   allowing vicarious liability under these circumstances violates his Fifth and

4   Sixth Amendment rights to be found guilty of each element of the charged

5   offense. (<u>Id.</u>)

6       Respondent argues that petitioner's claim is based solely in state law and

7   that habeas relief is therefore unavailable. (Answer, pp. 44-45.)

8       Relying on its decision in <u>People v. Lasater</u>, 61 Cal. Rptr. 2d 680 (1997),

9   the California Court of Appeal determined that petitioner was properly held

10  vicariously liable for Gilbert's acts of premeditation and deliberation. (SAP,

11  Exh. A, pp. 53-54.)

12      This Court may only grant habeas relief pursuant to a "violation of the

13  Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

14  As the Ninth Circuit Court of Appeals stated in <u>Peltier v. Wright</u>, 15 F.3d 860,

15  861-62 (9th Cir. 1994), "'state courts are the ultimate expositors of state law,'

16  and we are bound by the state's construction except when it appears that its

17  interpretation is an obvious subterfuge to evade the consideration of a federal

18  issue. (Citations omitted.)"  Accordingly, petitioner's claim that the California

19  Court of Appeal erred in deciding <u>People v. Lasater</u> is an issue left to the

20  authority of the state courts.

21      Furthermore, petitioner has not established a violation of his Fifth and

22  Sixth Amendment rights.  In <u>Lasater</u>, the California Court of Appeal

23  determined that premeditation and deliberation are not required elements for

24  finding vicarious liability under the state law. <u>People v. Lasater</u>, 61 Cal. Rptr.

25  2d 680, 694 (1997).  Accordingly, a conviction for aiding and abetting an

26  attempted murder in which there was no finding that the aider and abetter

27  acted with premeditation and deliberation does not invoke the constitutional

28  requirement that a jury make a finding as to each element of the charged

1   offense.

2        Since petitioner has not established a right upon which this Court may

3   grant habeas relief, it is recommended that this claim be **denied**.

4

5                        **RECOMMENDATION**

6        For all of the foregoing reasons, it is recommended that the court issue an

7   order: (1) approving and adopting this report and recommendation; and (2)

8   directing that judgment be entered denying the instant petition and dismissing

9   this action with prejudice.

10

11  DATED: _September 16, 2003_

12                                    _____

13                                    JEFFREY W. JOHNSON
                                      United States Magistrate Judge

14

15

16

17

18

19

20

21                        **NOTICE**

22        Reports and Recommendations are not appealable to the Court of

23  Appeals, but may be subject to the right of any party to file Objections as

24  provided in the Local Rules Governing the Duties of the Magistrate Judges and
    review by the District Judge whose initials appear in the docket number.  No

25  Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should
    be filed until entry of the Judgment of the District Court.

26

27

28

                                    - 18 -